1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT TACOMA

9    ARDEANA Q. ELLIS,

10                    Plaintiff,                    Case No.  C07-5302RJB

11            v.                                    ORDER GRANTING DEFENDANT'S
                                                    MOTION FOR SUMMARY
12   SMITHKLINE BEECHAM CORP., d/b/a/               JUDGMENT, GRANTING IN PART
     GLAXOSMITHKLINE,                               AND DENYING IN PART
13                                                  DEFENDANT'S MOTION TO
                      Defendant.                    STRIKE, AND DENYING
14                                                  PLAINTIFF'S MOTION TO STRIKE

15           This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt.

16   93), Defendant's Motion to Strike (Dkt. 108), and Plaintiff's Motion to Strike (Dkt. 115).  The

17   Court has considered the pleadings filed in support of and in opposition to the motions and the

18   remainder of the file herein.

19                          **I.  PROCEDURAL HISTORY**

20           On June 15, 2007, Plaintiff Ardeana Q. Ellis filed a complaint against Defendant SmithKline

21   Beecham Corp. alleging that various violations occurred during her almost eight years of

22   employment with Defendant.  Dkt. 1.  On September 12, 2007, Defendant filed a Motion to Dismiss,

23   for Partial Summary Judgment, and for More Definite Statement.  Dkt. 26.  On December 7, 2007,

24   the Court granted in part and denied in part Defendant's Motion.  Dkt. 60.  The Court held that

25

26   ORDER - 1

alleged discrete acts of gender or race discrimination under Title VII that occurred before November 25, 2005 (300 days before Plaintiff's EEOC Charge, dated September 21, 2006) were "time-barred." *Id*. at 11. It did not dismiss those untimely allegations only because "Plaintiff has not filed a cognizable complaint which permits the Court to determine which allegations support Plaintiff's Third, Fourth and Sixth causes of action." *Id*. The Court advised Plaintiff to "be mindful" that alleged events occurring before November 25, 2005 are time-barred by *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,105 (2002). Dkt. 60 at 11. The Court similarly ruled regarding time-barred allegations relating to Plaintiff's negligence-based claims, her claim for violation of RCW 49.60 and her claim under the Civil Rights Act of 1991. *Id*. at 11-12.

On January 7, 2008, Plaintiff filed a Second Amended Complaint. Dkt. 61 ("Complaint"). In that complaint, Plaintiff alleges the following eleven causes of action:

(1) petition for injunction;

(2) harassment from 6/15/01 to 6/15/07 pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), Age Discrimination in Employment Act of 1967 ("ADEA"), RCW 49.60.030, RCW 49.44.090, RCW 49.60.180, and RCW 49.60.210;

(3) racial discrimination from 6/15/01 to 6/15/07 pursuant to 42 U.S.C. § 1981, Title VII, Civil Rights Act of 1991, and RCW 49.60.030, RCW 49.44.090, RCW 49.60.180, and RCW 49.60.210;

(4) gender discrimination from 6/15/01 to 6/15/07 pursuant to Title VII, Civil Rights Act of 1991, Equal Pay Act of 1963, RCW 49.60.030, RCW 49.44.090, and RCW 49.60.180;

(5) age discrimination from 7/23/05 to 6/15/07 pursuant to Title VII, Civil Rights Act of 1991, ADEA, RCW 49.44.090, and RCW 49.60.180;

(6) retaliation for opposing unlawful employment practices from 6/15/01 to 6/15/07 pursuant to Title VII, Civil Rights Act of 1991, ADEA, and RCW 49.60.210;

(7) hostile work environment from 6/15/01 to 6/15/07 pursuant to Title VII, Civil Rights Act of 1991, and ADEA;

(8) tortuous interference with present and prospective employment relationships from 6/15/01 to 6/15/07 pursuant to Title VII and the Civil Rights Act of 1991;

(9)     breach of contractual obligations from 6/15/01 to 6/15/07 pursuant to 42 U.S.C. § 1981, Title VII, Civil Rights Act of 1991, U.C.C. § 1-304, et. seq., ADEA, and RCW 5.40.050;

(10)     intentional or negligent infliction of emotional distress from 6/15/01 to 6/15/07 pursuant to Title VII and Civil Rights Act of 1991; and

(11)     unequal pay from 6/15/01 to 6/15/07 pursuant to Title VII, ADEA, Equal Pay Act of 1963, RCW 49.60.180, and RCW 49.44.090.

Dkt. 61 at 9-17.

On January 22, 2008, Defendant filed a Second Motion to Dismiss. Dkt. 62. On March 3, 2008, the Court granted that motion and dismissed Plaintiff's Eighth Cause of Action. Dkt. 70.

On June 10, 2008, Defendant filed a Motion for Summary Judgment. Dkt. 93. On July 7, 2008, Plaintiff responded. Dkt. 101. On July 14, 2008, Defendant replied and included a motion to strike material that Plaintiff submitted as evidence. Dkt. 108. On July 18, 2008, Plaintiff filed a surreply and moved to strike material in Defendant's reply. Dkt.115.

Plaintiff is proceeding *pro se* in this matter. *See* Dkt. 1. The Court has allowed Plaintiff's complaint and discovery pleading to be held to less stringent standards than formal pleading drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519 (1972). The Court is unaware of any law requiring a less stringent standard at the procedural step of summary judgment.

## **II.  FACTS**

As an initial matter, neither party has submitted a statement of facts in any of the pleadings. The Court will give a brief background and will set forth more facts as they relate to the various causes of action.

In her Complaint, Plaintiff claims that she is a "41-year old black, female citizen and resident of the United States." Complaint, ¶ 8. Plaintiff claims that she began her employment as a pharmaceutical sales representative for Defendant in December 1999. *Id*., ¶ 9. Plaintiff claims that she "work[ed] as an Executive Medical Center Representative responsible for pharmaceutical sales and health care provider education." *Id*. She states that she "call[ed] upon large hospital accounts ...

ORDER - 3

and specialists in Neurology, Pulmonology, Allergy, Mental Health, Urology, Dermatology and ENT." *Id.*, ¶ 8. Sometime in 2007, Plaintiff claims that she lost her "employment relationship[]" with Defendant. *Id.*, ¶ 35.

Plaintiff alleges that numerous incidents of racial, age, and sex discrimination occurred throughout her employment with Defendant. *See, e.g., id.* ¶¶ 13, 18, 23. She also alleges that she was subjected to a hostile work environment and suffered emotional distress. *See, e.g., Id.* ¶¶ 18, 21.

### III. DISCUSSION

**A.      Defendant's Motion to Strike**

Defendant moves the Court to "strike Plaintiff's non-evidentiary assertions." Dkt. 108 at n.1. Defendant argues that "The Court is authorized to strike both Plaintiffs conclusory allegations made without personal knowledge and those aspects of her declaration that contradict her deposition testimony in numerous respects (as detailed in this Reply)." *Id.*

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir.2002); *see also* Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."). Federal Rule of Evidence 602 prohibits a witness from testifying on a matter "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Rule 602 is considered in conjunction with Rule 701, which limits opinions of non-experts to opinions rationally based on the perceptions of the witness. *See Weinstein's Evidence Manual* § 10.03 (2007). Thus, a witness has personal knowledge only when testifying about events perceived through the physical senses or when testifying about opinions rationally based on personal observation and experience. *See id.* Conclusory affidavits fail to establish foundation. *See Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co.*, 252 F.Supp.2d 917, 924 (D.Ariz. 2003). The Ninth Circuit has also "repeatedly held that unauthenticated documents cannot be considered in a motion

ORDER - 4

1    for summary judgment." *Orr*, 285 F.3d at 773.

2         While Defendant does not separately attack Plaintiff's declaration or allegations, it does so

3    with respect to allegations set forth on specific causes of action. *See* Dkt. 108. Accordingly, the

4    Court will state what evidence it does or does not rely on in its consideration of the instant motion.

5         As for Plaintiff's contradictory evidence, on a motion for summary judgment, the court must

6    consider new facts alleged in an affidavit if the inconsistency is "an honest discrepancy, a mistake, or

7    the result of newly discovered evidence." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th

8    Cir.1991). The court, however, may not exclude newly alleged evidence without making "a factual

9    determination that the contradiction was actually a 'sham.' " *Id*. In this case, the Court has not made

10   findings of fact regarding any contradictory evidence and, therefore, will consider Plaintiff's

11   admissible evidence, even if it contradicts her earlier representations.

12   **B.    Plaintiff's Motion to Strike**

13        Plaintiff moves the Court to strike material in Defendant's reply as follows:

14        (1)    "the Court should also grant summary judgment on any claim for wrongful
             termination." Dkt. #108, p. 1, lns. 18-19;
15
             (2)    "she has no personal knowledge on those subjects and she fails to support her
16           allegation with any documents supporting her assertion." Dkt. #108, p. 2, lns. 2-4;

17           (3)    "Her sole claim relates to her technical problems in 2006 in making on-line
             grant applications." Dkt. #108, p.5, lns. 19-20;
18
             (4)    "when Plaintiff reported Mr. Failano for allegedly distributing unauthorized
19           marketing materials she was not engaged in a protected activity." Dkt. #108, p. 11,
             lns. 18-19; and
20
             (5)    "Defendant adhered to its policies in addressing Plaintiffs internal complaint
21           and Plaintiff simply misunderstands the policies." Dkt. #108, p. 17, lns. 10-11.

22   Dkt. 115 at 1-3. Plaintiff seems to request that this material be stricken simply because she disagrees

23   with the arguments put forth by Defendant. *See id*. Plaintiff has failed to provide any authority for

24   the Court to strike arguments from an opposing party's pleading based on disagreement with those

25   arguments.

26   ORDER - 5

1      Plaintiff also moves the Court to strike three declarations that were submitted by Defendant:

2 (1) Kathy Jones' Declaration (Jones Decl.), Dkt. 114; (2) Diana Shomstein's Declaration (Shomstein

3 Decl.), Dkt. 109; and (3) Jon Duzan's Declaration (Duzan Decl.), Dkt. 113.  Dkt. 115 at 2-3.

4 Plaintiff argues that the Jones Decl. is "grossly inconsistent with the WorkForce Investigation Memo

5 of Understanding dated 10/23/06."  *Id.* at 3.  Plaintiff also argues that the Duzan Decl. is inconsistent

6 with other evidence on the record.  *Id.*  Plaintiff has cited no authority for the Court to strike

7 inconsistent evidence on a motion for summary judgment.

8      Plaintiff argues that the Duzan Decl. should be stricken because it includes hearsay.  Mr.

9 Duzan's statement that "I did not supervise Mr. Larson because he was in the Philiadelphia Pharma

10 division of [Defendant]," is not hearsay because it is not a statement "other than one made by the

11 declarant."  *See* Fed. R. Evid. 801.

12      Plaintiff argues that the Court should strike the Shomstein Decl. because she is an

13 undisclosed witness.  Dkt. 115 at 3.  Ms. Shomstein states that she is a paralegal employed by

14 Defendant's counsel.  Shomstein Decl. ¶ 2.  Based on her personal knowledge of this case, certain

15 exhibits submitted by Plaintiff were not disclosed to Defendant during discovery.  *Id.* ¶¶ 3-6.

16 Defendant claims that none of "Plaintiff's [undisclosed] exhibits helps her carry her burden [on

17 summary judgment] ... ."  Dkt. 108 at 5 n.4.  This issue is moot.

18      Finally, Plaintiff moves the Court to strike "Jason Mlsna's statement 'None of the entries in

19 Exhibit 2 even mention Pulmonary Consultants so it is impossible for me to know from this exhibit if

20 any of the calls made by Darcey Simmons ... were to Pulmonary Consultants.' " Dkt. 115 at 3.

21 Plaintiff argues that Mr. Mlsna knew or should have known who his employees were.  *Id.*  Again,

22 Plaintiff has cited no authority for the Court to strike this evidence.

23      Therefore, the Court should deny Plaintiff's Motion to Strike.

24 **C.**    **Defendant's Motion for Summary Judgment**

25      Defendant has moved for summary judgment on the remainder of Plaintiff's complaint and

26 ORDER - 6

seeks dismissal of all of Plaintiff's causes of action.  Dkt. 93 at 40.

**1.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

ORDER - 7

Finally, the purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. *See Celotex*, 477 U.S. at 323 (1986). A party may not prevail in opposing a motion for summary judgment by simply overwhelming the district court with a miscellany of unorganized documentation. *See Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Moreover, "[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

**2. Plaintiff's First Cause of Action for Injunctive Relief**

Plaintiff's seeks a workplace injunction. Complaint, ¶ 44. It is undisputed that Plaintiff no longer works for Defendant. Moreover, Plaintiff has failed to contest Defendant's motion on this cause of action and has failed to submit any evidence that she will ever work for Defendant again. Therefore, the Court should grant Defendant's motion and should dismiss Plaintiff's First Cause of Action: Petition for Injunction.

**3. Plaintiff's Causes of Action for Race, Gender, and Age Discrimination**

The Court has already ruled that any allegation included in Plaintiff's 2001 EEOC Charge is time-barred. Dkt. 60 at 8, 9. In addition, the Court has ruled that several statutes of limitations bar certain of Plaintiff's allegations. *Id*. at 9-12. Claims based on acts occurring prior to November 25, 2005 are barred with respect to Plaintiff's Title VII and ADEA race, gender and age discrimination claims; claims based on acts occurring prior to June 15, 2005 are barred with respect to Plaintiff's EPA claim for non-willful violations; claims based on acts occurring prior to June 15, 2004 are barred with respect to Plaintiff's WLAD claims and EPA claims for willful violations; and claims based on acts occurring prior to June 15, 2003 are time barred with respect to Plaintiff's Section 1981 race discrimination claims. *See* Dkt. 57 and 60. Defendant moves to dismiss the remainder of Plaintiff's Causes of Action for Race, Gender, and Age Discrimination under Title VII of the Civil

Rights Act of 1964, Age Discrimination in Employment Act of 1967 (ADEA), the Equal Pay Act and the Washington Law Against Discrimination. Dkt. 93 at 9-31.

A plaintiff may overcome a motion for summary judgment seeking to dismiss her claims of discrimination by producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the challenged employment decision. *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998).

Alternatively, plaintiff may overcome summary judgment under the tripartite burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Metoyer*, 504 F.3d at 931. First, plaintiff must establish a prima facie case of discrimination by showing "that (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." *See, e.g., Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088-89 (9th Cir. 2008) (Title VII sex discrimination); *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1105-1106 (9th Cir. 2008) (Title VII race discrimination); *Diaz v. Eagle Produce Ltd. Partnership,* 521 F.3d 1201, 1207 (9th Cir. 2008) (ADEA age discrimination). Second, if a plaintiff establishes her *prima facie* case of discrimination, the burden then "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). Third, if the employer articulates a legitimate reason for its action, "the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Diaz*, 521 F.3d at 1207.

In its motion, Defendant evaluated Plaintiff's facts and claims under the *McDonnell Douglas* test. *See* Dkt. 93 at 10. Plaintiff countered with a request that the Court "apply a mixed motive analysis to all her Title VII claims." Dkt. 101 at 23. Defendant responded that:

ORDER - 9

regardless whether a plaintiff proceeds under *McDonnell Douglas* or produces evidence that discrimination more likely than not motivated the decision, she must counter Defendant's explanations with evidence that the action " 'was due in part or whole to discriminatory intent.' " [*Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008)] (quoting *McGinest v. GTE Servo Corp.*, 360 F.3d 1103, 1123 (9th Cir.2004). Plaintiff has not done so here.

Dkt. 108 at 4-5 n.2.

### a.    Hospital Entry

Plaintiff alleges that she was discriminated against with respect to "hospital entry." *See* Complaint, ¶¶ 50, 54 & 58; *see also id.*, ¶¶ 22-23. Plaintiff's supervisor, John Mlsna, states that Plaintiff "was an Executive Medical Center Representative ("MCR") who called on *hospitals*, which is to be distinguished from Pharma Sales Representatives who called on *physicians* who may have had staff privileges at those hospitals." Dkt. 99, Declartion of John Mlsna ("Mlsna Decl."), ¶ 2. In her deposition, Plaintiff stated that her discrimination claim regarding "hospital entry" relates to (1) St. Peter's Hospital, where she alleges other white male employees were allowed access to that hospital without being required to sign its vendor contract as modified by Defendant's legal counsel, and (2) Tacoma General Hospital, where she alleges younger white employees of Defendant were given access without being required to sign the hospital's vendor contract as modified by Defendant's legal counsel. *See* Dkt. 94, Declaration of Ardeana Ellis ("Ellis Dep."), at 115:22-116:24, 203:13-205:11, 207:5- 209:7.

Plaintiff has submitted documents that she claims "shows that White, pharmaceutical sales representatives were approved to call on MultiCare facilities during the time Plaintiff was awaiting disposition regarding the legal language confusion created by Defendant." Dkt. 101 at 25. Those documents are: 1) one page of a website and 2) three pages of material titled "Calendar View." Dkt. 103-2, Declaration of Ardeana Ellis ("Ellis Decl."), Exh. 14. The website document, regardless of foundation or authenticity, only appears to show the names of doctors that were, on July 5, 2008, associated with Allenmore Medical Center. *Id*. Even if this document was admissible, it is

insufficient to establish Plaintiff's claim of racial, age, or sex discrimination.

As for the "Calendar Views," Mr. Mlsna states the following:

> The remaining three pages appear to be [Defendant's] Calendar Views showing call activity by certain sales representatives on a few days in January 2007, September 2005 and late June 2006. These three pages do not indicate that they relate to call activity at Multicare hospitals, and [Defendant] does not report call activity on the basis of specific hospital systems. A Calendar View simply records all call activity with respect to all providers on a given day. I am unable to identify any calls to a Multicare hospital in the three Calendar View pages that are part of Exhibit 14. Perhaps more important, even if the three pages did document a call to a provider who works at a Multicare facility, the Calendar View does not indicate where the call took place. Many calls occur at the doctor's office or outside the hospital (at a Starbucks, for example). Thus, even if these three pages did document a call to a Multicare provider, it would not provide any information about where the meeting took place.

Dkt. 110, Reply Declaration of Jason Mlsna ("Mlsna Reply Decl."), ¶ 5. Beyond allegation, Plaintiff does not explain how these "Calendar Views" are anything more than what Mr. Mlsna claims that they are. *See* Dkt. 101 at 24-26. Defendant argues that "the three pages [of Calendar Views] do not identify the Defendant employee, the employee's status, whether the unidentified hospital asked the employee to sign a contract, and if it did, whether the employee forwarded it to his or her manager for legal review and approval." Dkt. 108 at 6. Plaintiff has failed to establish that she has personal knowledge regarding any these points.

Even if Plaintiff's allegations were admissible, Defendant advances the explanation that legal review of hospital contracts is the normal operating procedure. Mlsna Decl., ¶¶ 5-11. Plaintiff has failed to show that this explanation constitutes mere pretext for discrimination.

### b. Promotional Opportunity

Plaintiff alleges that she was discriminated against with respect to "promotional opportunity." *See* Complaint, ¶¶ 50, 54 & 58. Defendant argues that some of Plaintiff's allegations are untimely and, as to the remainder, Plaintiff has failed to meet her burden. Dkt. 93 at 14.

Paragraph 12 of the Complaint alleges that Plaintiff lost a promotion in approximately 2001. Complaint, ¶ 12. Plaintiff testified about an alleged delay in promotion in 2001 due to misplaced

paperwork. Ellis Dep. at 159:20-162:16. This allegation was part of Plaintiff's 2001 EEOC charge. *See* Phillips Decl., Ex. 10 (EEOC charge, June 14, 2001). The Court has already held that any part of that charge is time barred. Dkt. 60 at 9. Plaintiff argues that her claim is not time barred because she "has established the existence of a hostile work environment that extends the period of time limitation." Dkt. 101 at 26-27. Plaintiff cites no authority for this proposition. The Court has been presented with no reason to vacate its prior order and, therefore, Plaintiff's claim is time barred.

Paragraph 18 of the Complaint alleges that Plaintiff was "den[ied] promotions due to [supervisor] Gwen Lynch's own negligence." Complaint, ¶ 18. Plaintiff testified that her normal career ladder progression from Senior Sales Representative (with a salary grade of S09) to Executive Sales Representative (with a salary grade of S08) was delayed for a few months until November 2004 because her supervisor, Gwen Lynch, had not conducted sufficient "ride-alongs" with her in order to enable that promotion. Ellis Dep. at 162:17-165:8. Based on the Court's prior order, this "promotional" claim is also time-barred except for her claim for race discrimination under Section 1981. *See* Dkt. 60.

Plaintiff argues that "Defendant has a neutral policy respecting promotional criterion" and therefore, "Plaintiff and her similarly situated peers must receive a set number of supervisor/pharmaceutical sales representative encounters ("ride-alongs") before promotion can be offered." Dkt. 101 at 27. Plaintiff alleges that her supervisor did not provide her with the "ride-along" opportunities whereas her supervisor did provide the opportunities to "similarly situated White peers." *Id*. Plaintiff has submitted no factual evidence supporting this allegation. The Court is unaware of any evidence in the record that shows the frequency of Plaintiff's opportunities and/or her peers' opportunities. Therefore, the Court should grant Defendant's motion for summary judgment on this issue because Plaintiff has failed to establish issues of material fact for this claim of discrimination.

      **c.**    **Grant Writing**

ORDER - 12

Plaintiff alleges that she was discriminated against with respect to "grant writing." *See* Dkt. 61, ¶¶ 50, 54 & 58. Defendant claims that, in March 2005, Plaintiff applied for six grant applications. Dkt. 93 at 18. Defendant periodically funds grants for non-profit organizations to host educational speakers. Dkt. 98, Declaration of Barry Echols ("Echols Decl."), ¶ 3. It has a Grants and Independent Medical Education Department located in Research Triangle Park, North Carolina. *Id.* This department reviews all grant applications to determine if they meet Defendant's established criteria for issuing a grant, one of which is the independence of the grantee from the Defendant. *Id.*, ¶ 4. The independence of a program (and the charitable nature of the contribution) may be compromised by an employee's involvement in "content" discussions, selection of speakers and the like. *Id.* The Grants Department in North Carolina denied Plaintiff's application because information obtained from the host organization (the Geneva Foundation) suggested that the grants did not meet the "independence" requirement. *Id.*, ¶ 6. After an investigation beginning on March 24, 2005 and formally ending on July 25, 2005, it was determined that the independence criterion was in fact met. *Id.*, ¶¶ 5 & 9. In the meantime, most of the programs were funded by Defendant as speaker programs rather than through grants. *Id.*, Ex. B. Plaintiff has failed to address this alleged failure of Defendant to process her grant application. *See* Dkt. 10.

In 2006, Plaintiff encountered problems in accessing the on-line grant application process. Ellis Decl., ¶¶ 26-27. Defendant claims that "The problem appears to have been associated with Plaintiff's laptop computer, which was eventually replaced." Dkt. 93 at 19. Her supervisor, Mr. Mlsna, asked for assistance within the company to help Plaintiff solve the IT problems she had encountered. Mlsna Decl., ¶¶ 3-4 & Ex. A. Plaintiff does not know why she had technical difficulties, and she testified that she could only "speculat[e]" about the cause. Ellis Dep. at 158:9-159:7. *See also* Dkt. 66-3 at 25 (10-5-06 transcription from Legarity explaining the technical problem). When asked why she thought that her grant writing problems were based on a protected characteristic, Plaintiff responded, "I don't know." Ellis Dep. at 227:3; *see also id.* at 226:21-

ORDER - 13

228:10. Plaintiff, however, argues that "Plaintiff who is Black, could not process grants while her similarly situated White peers could process grants placed her at a competitive disadvantage and is racially discriminatory." Dkt. 101 at 29.

Plaintiff has failed to show any direct or circumstantial evidence of a discriminatory intent. Moreover, Plaintiff has failed to rebut the legitimate reasons put forth by Defendant as to the problems with Plaintiff's laptop. Therefore, the Court should grant Defendant's motion for summary judgment on this issue because Plaintiff has failed to establish issues of material fact regarding the processing of on-line grants.

### d. Operation of Defendant's Employee Complaint Resolution and Grievance Process (US) (Policy No. 515) and Alternative Dispute Resolution (US) (Policy No. 520).

Plaintiff claims that she was discriminated against on the basis of race, gender and age with respect to Defendant's application of its Complaint Resolution and Grievance Policy. *See* Complaint, ¶¶ 50, 54 & 58; *see also* Dkt. 50-2 at 16-18. She testified that Defendant violated this policy because she was not given a "Third Level Review" under the Complaint Resolution procedure and because Defendant asked Mr. Michael Lord, an attorney, to meet with Plaintiff as part of its investigation into her discrimination claim. Ellis Dep. at 186:21-188:5; 193:9- 194:10.

It is undisputed that Plaintiff filed an internal complaint with Defendant alleging violations committed by Defendant's Department of Human Resources. It is also undisputed that Plaintiff's complaint reached the point of a "Third Level Review." Plaintiff claims that she never received that review. Ellis Decl. ¶ 21. The parties agree that Defendant's Policy No. 515 provides for that review to involve the "next senior level of HR at the site." Dkt. 93 at 23; Dkt. 101 at 30. Defendant does not deny that it failed to give Plaintiff a Third Level Review immediately upon request. Instead, Defendant argues that Plaintiff has not shown that this was an adverse employment action. Dkt. 93 at 22-24; Dkt. 108 at 9. Indeed, Plaintiff has failed to show how Defendant's inaction in this respect constituted "a material change in the terms and conditions of a person's employment." *Chuang v.*

ORDER - 14

*University of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000). Defendant hired an outside HR Consultant and Investigator, Shondah Allen, to meet with Plaintiff regarding Plaintiff's complaint against Defendant's HR department as well as Defendant's first stage of review of that complaint. *See* Dkt. 93 at 21-23. Plaintiff asserts that this meeting constituted Defendant's second level review. Dkt. 101 at 32. Plaintiff and Ms. Allen met in January of 2007 and Ms. Allen issued written findings on March 19, 2007. Phillips Decl., Ex. 9. In April of 2007, Plaintiff filed a complaint with the EEOC. *Id.*, Ex. 12. Plaintiff has failed to establish that Defendant's failure to render a "Third Level Review" between March 19 and April, when she filed her EEOC claim, constituted an adverse employment action. While Plaintiff may have found Defendant's hesitation to have been "irritating and perhaps unjustified, it did not materially affect the compensation, terms, conditions, or privileges" of Plaintiff's employment. *Chuang*, 225 F.3d at 1126.

Plaintiff alleges that an attorney, Michael Lord, participated in her grievance process. Ellis Dep. 187:25-188:15. Plaintiff argues that this was a violation of Defendant's employment policy and is "evidence showing racial discrimination." Dkt. 101 at 31. Plaintiff has not established that she ever met with Mr. Lord or that Mr. Lord was investigating her on behalf of Defendant (although this seems to be her implication). Defendant claims that Mr. Lord was hired to investigate Plaintiff's discrimination claim. Dkt. 50-2 at 13. Defendant's retention of Mr. Lord to investigate Plaintiff claims does not constitute an adverse employment action. Even if it somehow did, Plaintiff has failed to rebut Defendant's logical explanation of "securing external resources" to investigate Plaintiff's complaint.

Therefore, the Court should grant Defendant's motion for summary judgment on this issue because Plaintiff has failed to establish issues of material fact regarding her claim that Defendant violated its own grievance policy and/or alternative dispute resolution policy.

### e. Unequal Pay

Plaintiff asserts that she was paid unequally on the basis of race, gender and age. Dkt. 61, ¶¶

51, 55, 59, 72-73. A *prima facie* case under the Equal Pay Act requires Plaintiff to show that Defendant paid male employees more than female employees for equal work. *See* 29 U.S.C. § 206(d)(1). The *prima facie* Equal Pay Act case is thus "limited to a comparison of the jobs in question, and does not involve a comparison of the individuals who hold the jobs." *Stanley v. Univ. of So. Cal.*, 178 F.3d 1069, 1074 (9th Cir.), *cert. denied*, 528 U.S. 1022 (1999).

In 2006, Defendant performed an Equitable Salary Review Adjustment for Plaintiff, at her request. That review showed that Plaintiff's salary was 91% of the target market rate, which was an estimation of compensation to comparable representatives at competitor companies. Phillips Decl., Ex. 14 (e-mail to Plaintiff dated July 13, 2006). Plaintiff has shown that one "white, younger, male ... makes more than Plaintiff." Dkt. 101 at 33. (citing Dkt. 97, Declaration of Sheinita Hawkins, at 2, lls. 11-15). Plaintiff claims that the comparative employee, CE, was paid 99.5% of the target market rate. Dkt. 101 at 33. Plaintiff argues that "Holding to the tenants [sic] of the Equal Pay Act, there should be no difference in rate of pay between employees for jobs requiring equal pay, skill, and effort, within the same physical environment." *Id.* Plaintiff, however, must establish that she is "receiving lower wages than the average of wages paid to all employees of the opposite sex ... ." *See Hein v. Oregon College of Educ.*, 718 F.2d 910, 916 (9th Cir. 1983). Plaintiff has failed to establish this and, therefore, her claim under the Equal Pay Act fails as a matter of law.

As for Plaintiff's claims for unequal pay based on discrimination, Plaintiff relies on allegations instead of admissible evidence. Plaintiff stated that she had a "lack of personal knowledge" when asked if she knew how Defendant set its employees' salaries. Ellis Dep. at 91:25-92:4; 135:13-15. Moreover, Plaintiff has cited no authority for the proposition that the higher salary of one other employee establishes a *prima facie* case of discrimination. Defendant claims that Plaintiff was the only MCR in the region who did not have a college degree. Hawkins Decl. ¶ 9. Moreover, unlike other MCR's in her region, Plaintiff had been on corrective action (a verbal warning for 30 days in 2002 for a Territory Management issue) which adversely affected her salary vis-à-vis her peers.

Hawkins Decl. ¶¶ 7-10. Defendant argues that these differences, along with tenure, fully explain the salary differences between Plaintiff and other MCR's in the region. *Id*. Defendant concludes that Plaintiff "has thus failed to show that she even qualified for higher pay, a threshold requirement in meeting her burden." Dkt. 93 at 25-26.

Even if one employee's higher pay established a *prima facie* case, Plaintiff has failed to rebut Defendant's legitimate reason for Plaintiff's lower salary. Plaintiff argues that "no skill or ability derived from a college education and experience were required or utilized by the job in question." Dkt 101 at 34. This argument is without merit mainly because Plaintiff concedes that "a college degree is *now* a current prerequisite." Dkt. 101 at 34 (emphasis in original).

Therefore, the Court should grant Defendant's motion for summary judgment on this issue because Plaintiff has failed to establish issues of material fact on any of her claims for unequal pay.

### f.  Miscellaneous Allegations

Defendant has moved for summary judgment on all other allegations of discrimination that it could recognize in Plaintiff's complaint. *See* Dkt. 93 at 26-31. Plaintiff has failed to address these arguments. *See* 101. Therefore, the Court should grant Defendant's motion for summary judgment on the following issues: 1) Plaintiff being the only MCR for Defendant's Tacoma/Olympia team, Dkt. 93 at 26; 2) Plaintiff covering other representatives territory, *id*. at 27; 3) Plaintiff being required to enter the full names of the physicians upon who she called, *id*. at 29; and 4) Plaintiff not receiving Winners' Circle awards, *id*. at 30.

### 4.  Retaliation

It is an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a)(1).

To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a

protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citing *Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir.1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.*

Plaintiff bases her retaliation claim on her allegation that a co-worker, Ed Failano (Ellis Decl., ¶ 6), retaliated against her by cursing on the phone, because, according to Plaintiff, she had reported him to superiors for allegedly distributing unauthorized marketing materials. Dkt. 101 at 16; Dkt. 103, ¶ 7. Defendant argues that Plaintiff was neither involved in a protected activity nor suffered an adverse employment action. Dkt. 108 at 13-14. Defendant maintains that "Distributing unauthorized marketing materials is not an unlawful practice under the discrimination laws, so reporting such behavior is not 'protected activity' for purposes of a retaliation claim." *Id.* at 13. Even if this could somehow be considered a protected activity, Plaintiff allegations of Mr. Failano's actions do not amount to discriminatory changes in the "terms and conditions of [her] employment."

The Supreme Court has held that "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Because "Title VII [has] not become a 'general civility code,' " courts properly applying its provisions should "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the *sporadic use of abusive language* ... .' " *Id.* Plaintiff has failed to show that one verbal insult that included abusive language falls within the protections of Title VII. Therefore, the Court should grant Defendant's motion for summary judgment on Plaintiff's retaliation claim.

### 5. Harassment and Hostile Work Environment

In her Second Cause of Action, Plaintiff alleges that Defendant harassed her by blocking

"promotional opportunities, unequally paying her, verbally abusing her and for retaliating against her for opposing discriminatory practices." Complaint, ¶ 47. The claim is identical to Plaintiff's Seventh Cause of Action for Hostile Work Environment, in which she alleges that Plaintiff's "entire experience as an employee of Defendant has been riddled with unlawful employment practices that are not limited to outrageous, abusive, sexist and racist actions." *Id*, ¶ 64.

Plaintiff attempts to transmute her various disparate treatment claims into harassment and hostile work environment claims. Plaintiff may not do so. Discrete acts, such as refusal to promote, denial of transfer, suspension, and demotion, are independently actionable, and they may not be cobbled together into a harassment claim. *See Antonius v. King County*, 153 Wn.2d 256, 264 (2004); *see also Morgan*, 536 U.S. at 113 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").

To prevail on a hostile workplace/harassment claim, Plaintiff must show: (1) that she was subjected to verbal or physical conduct of a racial or sexual or age-related nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003)(Title VII); *see also Jones*, 439 F. Supp. 2d 1149, 1163 (W.D. Wash 2006) (same with respect to Section 1981 and the WLAD with the additional requirement that the conduct must be attributable to defendant). "The claim of hostile work environment is aimed at redressing the wrongs that occur, '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *See id*, 439 F. Supp. 2d at 1164 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal citations omitted).

Plaintiff alleges that "men yelled and cursed at her so severely that she became very uncomfortable and felt intimidated." Dkt. 101 at 36. In her declaration, Plaintiff cites three

employees who verbally insulted her with expletive language.  Ellis Decl., ¶¶ 8-13 (Mr. Failano, Mr. Mlsna, Sarah Mendez).  Plaintiff makes conclusory allegations that "Verbal insults that repeatedly 'called me out my [sic] name' occurred regularly throughout my time with the company" and "This steady harassment upset and frightened me."  *Id*. ¶¶ 15-16.  Defendant vigorously counters these accusations by attempting to impeach Plaintiff based on her failure to both contemporaneously inform Defendant of the other employees' conduct and Plaintiff's contradictory testimony during her deposition.  Dkt. 108 at 15-18.  The Court, however, may not exclude Plaintiff's contradictory evidence without conducting a factual determination on that evidence.  *See Kennedy*, 952 F.2d at 267.  In other words, for the purposes of summary judgment, Plaintiff may not be impeached based solely on contradictory pleadings and/or attached affidavits.

In addition to the verbal insults, "Plaintiff relies upon the 'Andy Rooney letter'[1] ... ."  Dkt. 101 at 7.  It is undisputed that this email contains material that is both racially and sexually discriminatory.  Defendant, however, does dispute how the email was disseminated.  Dkt. 93 at 36.  Defendant claims that:

> [the email] was forwarded to her by Dr. Stoloff, a physician who served as an outside speaker for Plaintiff at events sponsored by Defendant. *E.g.*, Phillips Decl., Ex. 19 (e-mail to Ardeana Ellis, May 30, 2006, recommending the Plaintiff be contact person for Dr. Stoloff). Dr. Stoloff was forwarded the e-mail from an employee of Defendant via his personal e-mail account. Dr. Stoloff then sent it to Plaintiff. Plaintiff did nothing about the forwarded e-mail until months later, when Jon Duzan became her supervisor. *Compare* Hawkins Decl., Ex. A, Harassment Free Workplace Policy at 2 (holding employees "responsible for the **timely** and accurate reporting of any occurrence which may be considered harassing. An employee, whether harassed or knowledgeable of a harassing act, **must** report such an incident to his/her supervisor.") (emphasis added). Then, she expressed concern that Mr. Duzan was a racist because he had been – like Dr. Stoloff and like Plaintiff herself – an involuntary recipient of the forwarded e-mail.

*Id*.  Plaintiff "contends that Defendant sought to violate her rights by taking advantage of the fact that Ms. Ellis is black and her new supervisor harbored sentiments about black people to the

---

[1] Plaintiff has attached this 9-page e-mail to two pleadings in this case and read the entire 9-page e-mail into the record at her deposition.  Dkt. 46-2 at 11-19 and Dkt 54-2 at 77-85. Ellis Dep. at 233:21- 239:24.

sentiments expressed in the racially sensitive material he disseminated." Dkt. 101 at 7. Plaintiff is again relying on allegation to establish her claims. There is no evidence in the record that Mr. Duzan directed this email at Plaintiff or that he disseminated it beyond him being involuntarily included on a forwarding list.

Taking the facts in the light most favorable to the Plaintiff, she must establish that Defendant's conduct was "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez*, 349 F.3d at 642. Further, in considering whether the discriminatory conduct was sufficiently severe or pervasive, the court should look to "all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir.2000) (quoting *Faragher*, 524 U.S. at 787-88). Plaintiff has failed to establish that Defendant's conduct was either sufficiently severe or pervasive. Even Plaintiff's unsupported allegations were to conduct that was infrequent, was not physically threatening, and could not be considered to unreasonably interfere with her work environment.

Therefore, the Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiff's claims for harassment and hostile work environment.

**6.    Breach of Contract**

Plaintiff's Second Amended Complaint alleges in her Ninth Cause of Action that "Because DEFENDANT failed to perform in part or in total its contractual duty with PLAINTIFF, DEFENDANT violated 42 U.S.C. § 1981, Title VII . . ., the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, RCW 5.40.050 and RCW 4.16.040." Complaint, ¶ 69. Plaintiff has provided no authority for a breach of contract claim under the federal acts or the state statutes. The Court will consider this claim under Washington State Law covering employee-employer contracts.

ORDER - 21

In order for an employer and employee to contractually obligate themselves to the terms of an employee policy manual, there must be offer, acceptance and consideration. *Christiano v. Spokane County Health Dist.*, 93 Wn. App. 90, 95, 969 P.2d 1078 (1998) (citing *DePhillips v. Zolt Const. Co.*, 136 Wn. 2d 26, 34, 959 P.2d 1104 (1998)). "[A]n employer's written promise, alone, is insufficient to constitute a contract containing all the essential elements of a contract." *Id.*

Defendant claims that "The Complaint does not identify the contract provisions that Defendant is supposed to have breached (Dkt. 61, ¶¶ 61-62), and Plaintiff refused to explain her breach of contract claim at her deposition. Ellis Dep. at 250:19-253:8." Dkt 93 at 37. Plaintiff counters that she "provided Defendant with 600 pages of supplemental disclosure containing information she would use to prove her various claims, including her claim for Breach of Contract." Dkt. 101 at 37. Plaintiff, however, has failed to identify evidence that constitutes an offer, acceptance or consideration. Plaintiff does allege that "Defendant did not adhere to the requirements of its Complaint Resolution and Grievance Process policy ... ." Dkt. 101 at 37. This allegation does not support the existence of and/or breach of a contract between Plaintiff and Defendant regarding that employee policy. Therefore, the Court should grant Defendant's motion for summary judgment on Plaintiff claim for Breach of Contract.

### 7. Intentional or Negligent Infliction of Emotional Distress

To establish an intentional infliction of emotional distress claim, a plaintiff must show (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) severe emotional distress on the part of the plaintiff. *Washington v. Boeing Co.*, 105 Wn. App. 1, 17 (2000). Plaintiff argues that she is not required to prove "objective symptomatolgy" for this claim. Dkt. 101 at 37-38. While Plaintiff is correct on that point, she has presented no evidence that creates an material issue of fact regarding this claim. *See* Dkt. 101 at 37-38. Plaintiff not only refused to open her medical records during discovery but also bases her claim only on the allegation that "[she] suffered severe emotional distress from [Defendant's] pervasive harassment." Ellis Decl., ¶ 23.

ORDER - 22

Plaintiff has failed to meet her evidentiary burden to overcome a motion for summary judgment. Therefore, the Court should grant Defendant's motion for summary judgment and dismiss Plaintiff's claim for intentional infliction of emotional distress.

To establish a negligent infliction of emotional distress claim, a plaintiff must prove that she has suffered emotional distress by "objective symptomatology," and the "emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Hegel v. McMahon*, 136 Wash.2d 122, 135, 960 P.2d 424 (1998). Plaintiff has neither disclosed medical diagnosis of emotional distress nor produced medical evidence of emotional distress. Dkt. 101 at 37-38; *see also* Dkt. 93 at 3-6 (discussion regarding Plaintiff's refusal to produce material during discovery). Therefore, the Court should grant Defendant's motion for summary judgment and dismiss Plaintiff's claim for negligent infliction of emotional distress.

# III. ORDER

Therefore, it is hereby

**ORDERED** that Defendant's Motion to Strike (Dkt. 108) is **GRANTED in part** and **DENIED in part**, Plaintiff's Motion to Strike (Dkt. 115) is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Complaint is dismissed.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 4th of August, 2008.

ROBERT J. BRYAN
United States District Judge

ORDER - 23